## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **SALVATORE MARINO &** ) | **CIVIL ACTION** |
| **ANGELA MARINO** ) | |
| **Plaintiffs** ) | |
| ) | **COMPLAINT** |
| **v.** ) | |
| ) | **JURY TRIAL DEMANDED** |
| ) | |
| **NCO FINANCIAL SYSTEMS, INC.** ) | |
| **Defendant** ) | |
| ) | **DECEMBER 11, 2009** |

### COMPLAINT

### I. INTRODUCTION

1.  This is a suit brought by a consumer and his mother who have been harassed and abused by defendant collection agency. This action is for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a et seq., and for intentional infliction of emotional distress.

### II. PARTIES

2.  Plaintiff Salvatore Marino is a natural person residing in Glastonbury, Connecticut.

3.  Plaintiff Angela Marion is a natural person residing in Hartford, Connecticut and is Plaintiff Salvatore Marino's mother.

4.  The defendant, NCO Financial Systems, Inc., ("NCO"), is a Pennsylvania corporation and is licensed by the Connecticut Department of Banking as a Consumer Collection Agency.

### III.  **JURISDICTION**

5.  Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331 and 1337, and Fed. R. Civ. P. 18(a).

6.  This Court has jurisdiction over NCO because it engages in debt collection activities within Connecticut.

7.  Venue in this Court is proper, as Plaintiffs are residents of Connecticut and the acts complained of occurred in this state.

### IV.  **FACTUAL ALLEGATIONS**

8.  Plaintiff Salvatore Marino had opened up a line of credit at Wal-Mart and accrued a debt.

9.  Sometime in June 2009, Plaintiff Salvatore Marino retained an attorney for the purpose of filing bankruptcy, and the Wal-Mart debt ("the debt") was to be included in the proposed bankruptcy.

10. Prior to hiring said attorney, NCO had been calling Plaintiff Salvatore Marino and sending him letters in an attempt to collect on the debt.

11. Not long after Plaintiff Salvatore Marino retained his attorney, NCO called him; during that call, he explained to NCO that he had hired an attorney to handle the debt, and he gave NCO his attorney's contact information.

12. NCO continued to place calls to Plaintiff Salvatore Marino, sometimes multiple times a day.

13. NCO also continued to send Plaintiff Salvatore Marino collection letters.

14. Plaintiff Salvatore Marino again spoke with an NCO representative and provided that representative with his attorney's contact information, but NCO told him that the calls would continue unless he gave NCO a "case number."

15. NCO continued to call Plaintiff Salvatore Marino.

16. NCO also called Plaintiff Angela Marino's house, even though Plaintiff Salvatore Marino had already provided NCO with his attorney's contact information on more than one occasion.

17. NCO called Plaintiff Angela Marino's house almost every day up until August 14, 2009, often multiple times a day; the calls sometimes would start around 7:30am and continue until 8:30 the following evening.

18. Plaintiff Angela Marino – who was working a shift that ended at Midnight at the time – would be jarred awake by the calls coming in from NCO early in the morning, and this angered her, and she would sometimes direct this anger towards Plaintiff Salvatore Marino.

19. The serial nature of NCO's calls also interfered with Plaintiff Angela Marino's ability to host relatives that were staying with her in her house.

20. On at least one occasion, Plaintiff Angela Marino answered one of NCO's calls and spoke with an NCO representative, and she told NCO that Plaintiff Salvatore Marino did not live with her and to stop calling, but NCO continued to call.

21. Plaintiff Angela Marino became very upset and exasperated by NCO's incessant calls to her home, and she sometimes would yell and complain to Plaintiff Salvatore Marino that she could not get proper sleep she needed because of the calls, and that the calls were interfering with her ability to host their relatives.

22. Plaintiff Salvatore Marino was very embarrassed by NCO's calls to Plaintiff Angela Marino's home; Plaintiffs argued repeatedly about the calls, and Plaintiff Salvatore Marino began to avoid making his usual visits to see Plaintiff Angela Marino so as to avoid further arguments and embarrassment.

23. On or around August 16, 2009, Plaintiff Salvatore Marino got another call from NCO, and this call was from an NCO representative named Alicia, and Plaintiff Salvatore Marino spoke with this representative and again provided NCO with his attorney contact information and explained that he was filing for bankruptcy, and Alicia proceeded to ask him why he was filing, and she said he had to pay anyway, and she told him that NCO would continue to call.

### V.  COUNT ONE
### Fair Debt Collection Practices Act
### (As to Plaintiff Salvatore Marino only)

24.  Plaintiff Salvatore Marino incorporates Paragraphs 1- 23

25. NCO violated the FDCPA, 15 U.S.C. § 1692c(b) by calling Plaintiff Salvatore Marino's mother without authorization.

26. NCO violated FDCPA § 1692b(2) by contacting Plaintiff Salvatore Marino's mother when it already had valid contact information for Plaintiff Salvatore Marino and his attorney.

27. NCO violated FDCPA § 1692c(a)(2) by contacting Plaintiff Salvatore Marino after knowing or having reason to know that he was represented by an attorney and had that attorney's contact information.

28. NCO violated FDCPA § 1692e(10) by falsely representing that Plaintiff Salvatore Marino had to pay anyway despite filing for bankruptcy.

29. NCO violated FDCPA § 1692d(5) by engaging Plaintiff Salvatore Marino in telephone conversation repeatedly with intent to annoy, abuse, or harass.

30. NCO violated FDCPA § 1692d by engaging in conduct as described above, the natural consequence of which was to harass, oppress, or abuse Plaintiff Salvatore Marino.

31. NCO violated FDCPA § 1692f by using unfair or unconscionable means to attempt to collect the debt as described above.

32. For NCO's violations of the FDCPA as described above, Plaintiff Salvatore Marino is entitled to recover his actual damages (including emotional distress related damages), statutory damages of $1,000.00, and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k.

## VI.  COUNT TWO
### Fair Debt Collection Practices Act
### (As to Plaintiff Angela Marino only)

33. Plaintiff Angela Marion incorporates Paragraphs 1-23.

34. NCO violated FDCPA § 1692d(5) by engaging Plaintiff Angela Marino in telephone conversation repeatedly with the intent to annoy, harass, or abuse Plaintiff Angela Marino.

35. NCO violated FDCPA § 1692c(a)(2) by contacting Plaintiff Angela Marino even though NCO knew that Plaintiff Salvatore Marino's contact information, his attorney's contact information, and that Plaintiff no longer resided with Plaintiff Angela Marino.

36. NCO violated FDCPA, 15 U.S.C. § 1692c(b)  by communicating with Angela Marino in an unauthorized manner.

37. NCO violated FDCPA § 1692f by using unfair or unconscionable means to attempt to collect the debt as described above.

38. NCO violated FDCPA § 1692d by engaging in conduct as described above, the natural consequence of which was to harass, oppress, or abuse Plaintiff Angela Marino.

## VII.  COUNT THREE
### Connecticut Unfair Trade Practices Act
### (As to both Plaintiffs)

39. Plaintiffs incorporate Paragraphs 1-23.

40. NCO violated CUTPA by its debt collection activities described above.

41. NCO's acts as described above were unfair, immoral, unethical, oppressive and unscrupulous and such as such to cause substantial injury to consumers, especially Plaintiffs.

42. NCO is liable to Plaintiffs for their actual damages, attorney's fees and costs, and punitive damages pursuant to Conn. Gen. Stat. § 42-110g.

## VIII.  COUNT FOUR
### Intentional Infliction of Emotional Distress
### (As to both Plaintiffs)

43. Plaintiffs incorporate Paragraphs 1-23.

44. NCO knew or reasonably should have known that their conduct would likely cause emotional distress to Plaintiffs.

45. NCO's conduct did cause Plaintiffs emotional distress, shame, embarrassment, stress and anxiety.

46. NCO's actions were willful, wanton and malicious, in that they intended to cause Plaintiffs distress to induce Plaintiff Salvatore Marino to pay the debt, in hopes that he would pay in order to relieve the stress.

47. NCO is liable for Plaintiffs' damages.

WHEREFORE, Plaintiffs pray for the following relief:

Monetary damages related to Plaintiffs' emotional distress; actual damages, statutory damages, and attorney's fees and costs pursuant to 15 U.S.C. § 1692k. monetary damages pursuant to Conn. Gen. Stat. §42-110g; punitive damages pursuant to Conn. Gen. Stat. § 42-110g; attorney's fees and costs pursuant to Conn. Gen. Stat. § 42-110g, and such other relief as this Court deems appropriate.

PLAINTIFFS, SALVATORE MARINO &
ANGELA MARINO

By:

Daniel S. Blinn, ct02188
Matthew W. Graeber, ct27545
dblinn@consumerlawgroup.com
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408; Fax. (860) 571-7457